IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| DALE MORTENSEN and MELISSA BECKER, individually, and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>BRESNAN COMMUNICATION, L.L.C.<br><br>Defendant. | CV 10-13-BLG-RFC<br><br><br><br>ORDER DENYING MOTION TO COMPEL ARBITRATION |

## I. INTRODUCTION

Presently before the Court is Defendant Bresnan Communications' Motion to Compel Arbitration. *Doc. 8.* In bringing the motion, Defendant contends that a valid agreement exists between Plaintiffs and Defendant wherein Plaintiffs agree to submit all disputes to binding arbitration. Plaintiffs oppose the motion on the grounds that (1) the agreement is not valid; (2) the arbitration provision is

unenforceable; and (3) the arbitration provision is a contract of adhesion.

## II. BACKGROUND

Plaintiffs, representing a putative class, allege that from early 2008 thru June of 2008, Defendant Bresnan Communications, as an Internet Service Provider ("ISP"), diverted substantially all of Plaintiffs' Internet communications to NebuAd, Inc., an advertising company. Plaintiffs further allege that NebuAd used this information to create profiles of Bresnan's customers in order to target them with preference-sensitive advertisement.

Plaintiffs contend that these activities were not in Bresnan's regular course of business as an ISP and were not to protect Bresnan or its customers. Moreover, Plaintiffs contend that the Bresnan never obtained the consent of its customers to perform this action. As such, Plaintiffs bring the present suit alleging (1) violations of the Electronic Communications Privacy Act ("ECPA"); (2) violations of the Computer Fraud and Abuse Act ("CFAA"); (3) invasion of privacy; (4) unjust enrichment; and (5) trespass to chattel.

## III. DISCUSSION

Defendant argues that all of Plaintiffs' claims are bound by the Arbitration Provision contained in the *Bresnan OnLine Internet Service Subscriber Agreement and Acceptable Use Policy* ("Agreement"). Specifically, Defendant cites the first

paragraph of the Agreement which states that "[t]he Bresnan OnLine cable Internet Service (the "Service") is provided to you (the "Customer") by Bresnan Communications, LLC (Bresnan Agreement"). Please read this Agreement very carefully, because by accepting the Service, you agree to all of these terms."[1]

The paragraph 9 of Agreement also contains a Binding Arbitration provision which states in relevant part,

> ***Binding Arbitration.*** ANY AND ALL DISPUTES ARISING BETWEEN CUSTOMER AND BRESNAN COMMUNICATIONS (WHETHER BASED IN CONTRACT, STATUTE, REGULATION, ORDINANCE, TORT - INCLUDING, BUT NOT LIMITED TO, FRAUD, ANY OTHER INTENTIONAL TORT OR NEGLIGENCE, - COMMON LAW, CONSTITUTIONAL PROVISION, RESPONDEAT SUPERIOR, AGENCY OR ANY OTHER LEGAL OR EQUITABLE THEORY), WHETHER ARISING BEFORE OR AFTER THE EFFECTIVE DATE OF THIS AGREEMENT, MUST BE RESOLVED BY FINAL AND BINDING ARBITRATION. THIS INCLUDES ANY AND ALL DISPUTES BASED ON ANY PRODUCT, SERVICE OR ADVERTISING CONNECTED TO THE PROVISION OR USE OF THE SERVICE. The Federal Arbitration Act ("FAA"), not state law, shall govern the arbitrability of all disputes between Bresnan Communications and Customer regarding this Agreement and the Service. Bresnan Communications and Customer agree, however, that New York or federal law shall apply to and govern, as appropriate, any and all claims or causes of action, remedies, and damages arising between Customer and Bresnan Communications regarding this Agreement and the Service, whether arising or stated in contract, statute, common law, or any other legal

---

[1] *DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION. Exhibit B.*

theory, without regard to New York's choice of law principles. . .[2]

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

As such, courts may invalidate arbitration clauses if there are grounds for revocation under applicable defenses under contract law. Defenses such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening federal law. *Al- Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1257 (9th Cir.2005) (*quoting Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). When looking to the law of contract formation and defenses, courts consider an arbitration agreement's enforceability according to the laws of the state in which the contract was formed. *Id.*

In general, Montana has determined arbitration agreements between parties to be valid and enforceable. *Kortum-Managhan v. Herbergers NBGL*, 349 Mont. 475, ¶ 4 (2009); *Burkhart v. Semitool, Inc.*, 300 Mont. 480, ¶ 15 (2000). In addition, "[a] district court may not decide the merits of a case when a valid

---

[2]*DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION. Exhibit B.*

agreement requires the parties to a dispute to submit to arbitration." *Ratchye v. Lucas*, 288 Mont. 345, ¶ 26 (1998). Most importantly, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Hubner v. Cutthroat Communications, Inc.*, 318 Mont. 421, ¶ 17 (2003). "Acceptance or consent by the party against whom the contract is sought to be enforced is required before a contract is enforceable." *Id.*, 318 Mont. at ¶ 21 (*citing* Mont. Code Ann. § 28-2-102(2)).

In the instant case, the record clearly reflects that the Class Plaintiffs had no opportunity to negotiate the terms of the Agreement. Rather, as Defendant notes, "[s]ubcribers to Bresnan's Internet service can receive that service only upon their agreement to be bound to the *Bresnan OnLine Internet Service Subscriber Agreement and Acceptable Use Policy* . . . [b]y seeking out and accepting Bresnan's Internet service, Plaintiffs became bound to the Arbitration Provision."[3] Essentially, the Agreement, including the arbitration provision, was presented on a "take it or leave it" basis.

The Montana Supreme Court has held agreements of this nature to be contracts of adhesion. *Kortum-Managhan*, 349 Mont. at ¶ 12. "Contracts of

---

[3]*DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION*, pp. 6-7.

adhesion arise when a party possessing superior bargaining power presents a standardized form of agreement to a party whose choice remains either to accept or reject the contract without the opportunity to negotiate its terms." *Zigrang v. U.S. Bancorp Piper Jaffray, Inc.*, 329 Mont. 239, ¶ 14 (2005) (*citing Kloss v. Edward D. Jones & Co.*, 310 Mont. 123 (2002), *cert. denied*, 538 U.S. 956 (2003)). Further, under Montana law, a contract of adhesion containing an arbitration provision will not be enforced against a weaker party if (1) arbitration is not within the party's reasonable expectations or (2) arbitration is within the party's expectations but it is unduly oppressive, unconscionable, or against public policy. *Iwen v. U.S. West Direct*, 293 Mont. 512, 977 P.2d 989, 994-95 (Mont.1999).

Here, this Court concludes that the Agreement falls well within the definition of contract of adhesion. The Agreement was a standardized form that Plaintiffs had no opportunity to negotiate. Rather, their only choice was to either accept or reject the Internet service without opportunity to negotiate any of the preprinted terms of the use Agreement. *Woodruff v. Bretz*, 353 Mont. 6, 9 (2009).

However, contracts of adhesion are not *per se* unenforceable. *Iwen v. U.S. West Direct, a Div. of U.S. West Marketing Resources Group, Inc.*, 293 Mont. 512, ¶ 28 (1999); *Kloss*, 310 Mont. at ¶ 24. Rather, greater scrutiny must be applied

when a provision of the contract of adhesion, such as the one before us, implicates a fundamental constitutional right. In the instant case, the arbitration provision, if enforced, would preclude Plaintiffs to the rights to trial by jury and access to the courts.[4] *Kortum-Managhan*, 349 Mont. at ¶ 25. Further, before a fundamental right can be effectively waived, the person must personally consent to the waiver after being advised of the consequences; "the contractual waiver of fundamental constitutional rights must be deliberately and understandingly made." *Id.* (internal quotations omitted).

In determining whether a waiver of fundamental right was deliberately, understandingly and intelligently made, Montana courts consider the following factors:

> whether there were any actual negotiations over the waiver provision; whether the clause was included on a take-it-or-leave-it basis as part of a standard-form contract; whether the waiver clause was conspicuous and explained the consequences of the provision (e.g. waiver of the right to trial by jury and right of access to the courts); whether there was disparity in the bargaining power of the contracting parties; whether there was a difference in business experience and sophistication of the parties; whether the party charged with the waiver was represented by counsel at the time the agreement was executed; whether economic, social or practical duress compelled a party to execute the contract (e.g. where a consumer needs phone service and the only company or companies providing that service require execution of an adhesion contract with a binding arbitration clause before service will be extended); whether the agreement was actually signed

---

[4] *Montana Constitution, Articles II, §§ 26 & 16, respectively.*

or the waiver provision separately initialed; whether the waiver clause was ambiguous or misleading; and whether the party with the superior bargaining power lulled the inferior party into a belief that the waiver would not be enforced. *Kloss*, 310 Mont. at ¶ 65; *Kortum-Managhan*, 204 P.3d at ¶ 27.

In applying the *Kloss* factors to our present parties and the applicable Agreement, it is evident that most, if not all, of the factors run in the Plaintiffs favor. The Agreement was presented by Defendant to Plaintiffs on a take-it-or-leave-it basis. No negotiations were had. The arbitration provision in the Agreement was not conspicuous nor was the consequence of accepting it explained to Plaintiffs. Plaintiffs were not sophisticated business persons that could have been presumed to know and understand the effect of an arbitration provision. Finally, neither the Agreement nor the arbitration provision in particular were signed by the Plaintiffs.

For the foregoing reasons, this Court concludes the arbitration provision found in the Agreement was not within Plaintiffs' reasonable expectations. Further, under Montana law, Defendant's have failed to establish that Plaintiffs' waiver of rights to trial and access to courts was deliberately, understandingly and intelligently made. The arbitration provision in the Agreement is void.

Given this Court's ruling on this argument, it need not address Plaintiffs' remaining objections.

## IV. ORDER

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration (*Doc. 8*) is **DENIED**.

DATED this 15th day of November, 2010.

_____
RICHARD F. CEBULL
CHIEF U.S. DISTRICT JUDGE