IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| **DALE MORTENSEN and MELISSA BECKER, individually, and on behalf of himself and all others similarly situated,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**BRESNAN COMMUNICATIONS, LLC.**<br><br>    **Defendant.** | **Case No.:  CV-10-13-BLG-RFC** |

**PLAINTIFFS' BRIEF IN OPPOSITION**

**TO DEFENDANT'S MOTION FOR RECONSIDERATION**

i

## **TABLE OF CONTENTS**

ARGUMENT ................................................................................................................ 2

    The Supreme Court's Decision in *AT&T Mobility LLC v. Concepcion* ................ 2

    The Montana Law Applied in the Court's Arbitration Order Is Significantly
    Different From The California Law Held To Be Preempted by the FAA in
    *Concepcion* ................................................................................................................ 5

    Montana Law on Waiver of Fundamental Constitutional Rights Does Not Have a
    Disproportionate Impact on Arbitration Agreements .......................................... 10

CONCLUSION ......................................................................................................... 13

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Al-Safin v. Circuit City Stores, Inc.*,
394 F.3d 1254 (9th Cir. 2005) .................................................................................. 13

*Arellano v. T-Mobile USA, Inc.*,
No. C 10-05663, 2011 WL 1842712 (N.D. Cal.) ................................................... 11

*AT&T Mobility LLC v. Concepcion*,
131 S. Ct. 1740 (April 27, 2011) ("Concepcion") ......................................... passim

*Discover Bank v. Sup. Ct.*,
36 Cal.4th 148, 113 P.3d 1100 (2005) ............................................................ passim

*Doctor's Assocs., Inc. v. Casarotto*,
517 U.S. 681, 116 S. Ct. 1652 (1996) ............................................................... 5, 6

*Iwen v. U.S. West Direct*,
293 Mont. 512 (2002) .................................................................................. 6, 8, 12

*Kloss v. Edward D. Jones & Co.*,
310 Mont. 123 (2002) *cert. denied*, 538 U.S. 956 (2003) ...................... 6, 8, 9, 11

*Kortum-Managhan v. Herbergers NBGL*,
349 Mont. 475 (2009) ................................................................................................ 6

*Perry v. Thomas*,
482 U.S. 483, 102 S. Ct. 2520 (1987) ................................................................. 5

*Woodruff v. Bretz, Inc.*,
353 Mont. 6 (2009) ........................................................................................ 8, 10

**STATUTES**

9 U.S.C. § 2 ................................................................................................................. 2, 5

9 U.S.C. § 3 .................................................................................................................... 3

9 U.S.C. § 4 .................................................................................................................... 3

**OTHER AUTHORITIES**

Fed. R. Civ Pro., Rule 23 .......................................................................................... 4

**INTRODUCTION**

Defendant Bresnan Communications Inc. ("Defendant" or "Bresnan") is trying for the second time to enforce an arbitration provision included in its OnLine Internet Service Subscriber Agreement and Acceptable Use Policy (the "Subscriber Agreement"). This Court previously held that the arbitration provision was unenforceable, and nothing in the Supreme Court's decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (April 27, 2011) ("*Concepcion*"), or the Federal Arbitration Act ("FAA") itself, undermines the Court's November 15, 2010 Order Denying Defendant Bresnan Communications' Motion to Compel Arbitration (the "Arbitration Order").

Defendant overstates the reach of the Supreme Court's decision in *Concepcion* by mischaracterizing it as an expansive ruling on the FAA's preemption of Montana's rules governing the validity of arbitration clauses in contracts of adhesion. Dkt. 37, at 5. However, *Concepcion* has little or no impact on Montana contract law as applied by the Court in finding that the arbitration provision in the Subscriber Agreement was not within the Plaintiffs' reasonable expectations and that Bresnan had failed to establish that Plaintiffs had "deliberately, understandingly and intelligently" waived their fundamental right to access the courts. Dkt. 29, at 8.

Montana's contract law governing the validity of arbitration clauses in contracts of adhesion does not run afoul of the FAA. As discussed more fully below, Montana courts, including this Court in its Arbitration Order, do not apply Montana contract law in a fashion that disfavors arbitration.

## ARGUMENT

**The Supreme Court's Decision in AT&T Mobility LLC v. Concepcion**

In *Concepcion*, customers of AT&T brought a class action setting forth claims for "fraud" and "false advertising" surrounding the imposition of sales tax on consumers for cell phones that were advertised as "free." *Concepcion*, 131 S. Ct. at 1744.

The sole question presented to the Supreme Court was "whether § 2 [of the FAA] preempts California's [*Discover Bank*] rule classifying most collective-arbitration waivers in consumers contracts as unconscionable." *Id.* at *1746. The Court acknowledged that the "savings clause" of 9 U.S.C. § 2 permits the invalidation of arbitration agreements by "'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* at *1746.

In concluding that the FAA preempted the *Discover Bank* rule, the *Concepcion* Court looked to the "two goals" of the FAA in relation to the

"consumer-friendly" terms of AT&T's wireless service agreement, and the speed and efficiency of bilateral arbitration as opposed to class arbitration. *Id.* at 1749-1752 citing *Discover Bank v. Sup. Ct.*, 36 Cal.4th 148, 113 P.3d 1100 (2005). According to the Court, "[t]he overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at *1748. Similarly, the Court reinforced its prior holding that the text of these FAA sections allows parties "to limit *with whom* a party will arbitrate." *Id.* at *1749 (internal citations omitted). In fact, the Court held that "class arbitration, to the extent that it is manufactured by *Discover Bank* rather than consensual, is inconsistent with the FAA" because it "interferes with the fundamental attributes of arbitration." *Id.* at **1751, 1748.

In reaching this holding, the *Concepcion* Court analyzed what it perceived to be the benefits of bilateral arbitration under the specific terms of the plaintiffs' wireless service agreement with AT&T compared to the costs, risk, and time in reaching resolution through class arbitration under the *Discover Bank* rule. *Id.* at **1744, 1749-1752. Great care was taken by the Court to detail the specific terms of the wireless service agreement including consumers' ability to file a one-page form from AT&T's website to initiate dispute resolution, that AT&T will pay all costs of arbitration, that the arbitration occurs in the consumers' home county, that

for claims under $10,000 the consumer can choose to have the arbitration by phone, in person, or on the papers, that either party could alternatively bring a small claims suit, and that the arbitrator has the power to issue individual injunctions and punitive damages, that AT&T is unable to seek reimbursement of its attorney fees, and that if the consumer is awarded an amount more than AT&T's last settlement offer that it will pay a minimum of $10,000 and double the consumers attorney fees. *Id.* at *1744. These terms persuaded the *Concepcion* Court to support the District Court's findings that "this scheme [was] sufficient to provide incentive for the individual prosecution of or meritorious claims" and that the plaintiffs "were *better off* under their arbitration agreement with AT&T than they would have been as participants in a class action, which could take months if not years, and which may yield an opportunity to submit a claim for recovery of a small percentage of a few dollars." *Id.* at *1753.

In contrast, the Court articulated three reasons that bilateral arbitration better comports with the goals of the FAA than class arbitration under *Discover Bank*. *Id.* at *1750-1752. First, the Court found that forced class arbitration was inconsistent with the FAA because it sacrifices the informality of bilateral arbitration while making the process slower, more expensive, and less likely to result in a judgment. *Id.* at *1751. Similarly, the Court noted that class arbitration necessitates certain procedural formalities akin to Rule 23 in order to bind absent

parties. *Id.* at *1751-1752. Finally, the Court found that Congress did not intend to allow the states to force defendants to assume the risks of class arbitration, which lacks an effective means of review. *Id.* at *1752. Ultimately, the *Concepcion* Court determined the FAA preempted California's application of its civil unconscionability law involving waivers of class arbitration, but unequivocally stated that § 2's "savings clause" permits States "to take steps addressing contracts of adhesion" so long as those steps do not "conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms." *Id.* at *1750, n 6.

**The Montana Law Applied in the Court's Arbitration Order Is Significantly Different From The California Law Held To Be Preempted by the FAA in *Concepcion***

The Supreme Court's ruling in *Concepcion*—that the FAA preempts state laws that require the availability of class arbitration over consumer-friendly bilateral proceedings—offers no basis to disturb the Court's decision denying Defendant's motion to compel arbitration.

First, Montana law is consistent with the FAA, which the Supreme Court has repeatedly emphasized permits arbitration agreements to be invalidated on grounds that apply to any contract. *See Concepcion*, 131 S. Ct. at 1746 (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652 (1996), *Perry v. Thomas*, 482 U.S. 483, 492-93, n.9, 102 S. Ct. 2520 (1987)).

*Concepcion* does not affect or conflict with Montana law construing the FAA's savings clause. *Kloss v. Edward D. Jones & Co.*, 310 Mont. 123 (2002) *cert. denied*, 538 U.S. 956 (2003) and *Iwen v. U.S. West Direct*, 293 Mont. 512 (2002), relied upon by this Court in the Arbitration Order, each note that while generally applicable contract law defenses may be used to set aside arbitration agreements, states may not craft special rules which only apply to arbitration provisions for the purpose of defeating arbitration. *Kloss*, 310 Mont. 123, ¶23; *Iwen*, 293 Mont. 512, ¶26.) (citing *Casarotto*, 517 U.S. at 687, and unequivocally stating that the "Supreme Court interpreted the FAA as allowing state action generally applicable to all contract and other matters *but not as fostering rejection or chilling of the federal policy in favor of arbitration*") (emphasis added) (citations omitted); *see also*, *Kortum-Managhan v. Herbergers NBGL*, 349 Mont. 475, ¶17 (2009) ("[f]ederal policy favors arbitration and places arbitration agreements on equal footing with all other contracts").

Second, Montana's rules governing contracts of adhesion, as articulated and applied by this Court, are fundamentally different from the California rule invalidated in *Concepcion*. *Concepcion* struck down as preempted by the FAA's the California *Discover Bank* rule, which would formulaically invalidate a class action ban and force the parties into non-consensual class arbitration whenever there was (a) a consumer contract of adhesion; (b) predictably small damages; and

6

(c) and allegation that the defendant corporation has engaged in a scheme to cheat consumers. 131 S. Ct. at 1750.

The Supreme Court in *Concepcion* found that the *Discover Bank* rule against class action waivers "interferes with arbitration" because:

> **Although the rule does not require classwide arbitration, it allows any party to a consumer contract to demand it ex post.** The rule is limited to adhesion contracts, but the times in which the consumer contracts were anything other than adhesive are long past. The rule also requires that damages be predictably small and that the consumer allege a scheme to cheat consumers. The former requirement, however, is toothless and malleable (the Ninth Circuit has held that damages of $4,000 are sufficiently small), and the latter has no limiting effect, as all that required in an allegation.

*Id.* at 1750 (citations omitted) (emphasis added). In further support of its finding that the *Discover Bank* rule "allows any party to a consumer contract to demand" class action procedures, the Supreme Court emphasized that "California Courts have frequently applied this rule to find arbitration agreements unconscionable." *Id*. at 1746.

Montana's contract of adhesion rules applied by the Court in the Arbitration Order do not concern class arbitrations or whether the terms of an arbitration clause are unconscionable. *See* Dkt. 35, at 2, n.1 ("Bresnan repeatedly characterizes this Court's refusal to compel arbitration as based on a finding that the arbitration provision was unconscionable….[t]his Court made no such finding…). This Court applied long-standing Montana rules governing the

enforceability of contracts of adhesion containing arbitration provisions: the requirement that such provisions be within the weaker party's "reasonable expectation" and ten factors identified by the Montana Supreme Court in *Kloss* for determining whether a waiver of a fundamental constitutional was "deliberately, understandingly and intelligently" made. Dkt. 29, at 8.

The Montana contract principles at issue here, which principles necessarily depend on individualized facts of each case for reasons discussed below, create nothing like the "class action-on-demand" rule that the *Concepcion* court found to frustrate the FAA's purpose to provide for streamlined proceedings for the vindication of claims.

Defendant concedes that the Montana contract law applied by the Court consists of legal principles generally applicable to all contracts, not just contracts of adhesion containing arbitration clauses. *See* Dkt. No. 37, at 6 (noting that special protections for the fundamental right of access to the courts "ostensibly are capable of application to all contracts"). However, Defendant contends that in practice such rules have the effect of disfavoring arbitration, in violation of the FAA. Dkt. 36, at 6.

Defendant ignores the fact that, in Montana, contracts of adhesion are not *per se* unenforceable. Arbitration Order at 6 (citing *Iwen v. U.S. West Direct, a Div. of U.S. West Marketing Group, Inc.*, 293 Mont. 512, ¶ 24); *see also Woodruff*

8

*v. Bretz, Inc.*, 353 Mont. 6, ¶ 14 (2009) ("[b]ut the fact that the…contract is one of adhesion does not by itself render the arbitration clause unenforceable) (collecting cases). The Montana Supreme Court has acknowledged that "[t]he fact that an arbitration clause is contained in the contract does not by itself establish the weaker party's reasonable expectations." *Id*. at ¶ 15. "[R]easonable expectations derive from all of the circumstances surrounding the execution of the contract…." *Id*. "In addition, the waiver of fundamental constitutional rights must be voluntary, knowingly, and intelligent—an issue that likewise depends on the totality of the circumstances." *Id*.

*Concepcion* does not call into question the validity of generally applicable Montana contract law governing adhesion contracts. To the contrary, in Supreme Court noted that:

> Of course States remain free to take steps addressing the concerns that attend contracts of adhesion—for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted. Such steps cannot, however, conflict with the FAA or frustrate its purpose to ensure that private arbitration agreements are enforced according to their terms.

131 S.Ct. at 1750, n.6.

The ten *Kloss* factors, such as whether the agreement was actually signed or the waiver provision separately initialed, are therefore permissible under *Concepcion* as long as they do not do not conflict with the FAA or frustrate its purpose. Because the *Kloss* factors allow Montana courts to evaluate contracts of

9

adhesion that waive fundamental constitutional rights on a case-by-case basis (and therefore do not equate to a blanket or categorical rule like the California *Discover Bank* rule) and therefore allow for a myriad of outcomes (including compelled arbitration), they do not run afoul to the purpose of the FAA. Defendant has failed to show how the application of these factors disproportionately affect arbitration agreements or interfere with fundamental attributes of arbitration.

**Montana Law on Waiver of Fundamental Constitutional Rights Does Not Have a Disproportionate Impact on Arbitration Agreements**

Unlike the California *Discover Bank* rule in *Concepcion*, Montana's requirement that a constitutional fundamental right cannot be waived unless the person personally consents to the waiver after bring advised of the consequences does not interfere with arbitration agreements. It affects any contractual provision that would waive a fundamental right. In the Arbitration Order, the Court found that the arbitration provision was not conspicuous, was not explained to Plaintiffs, and was unsigned by Plaintiffs. Dkt. No. 29, at 8. This highly fact-sensitive analysis of the totality of the circumstances surrounding the contract formation would be applicable to any contractual provision, not specifically arbitration provisions. This rule does not preclude arbitration, nor disproportionately disfavor it.

Defendant relies on *dictum* in *Kortum-Managham* and *Woodruff* to argue that because arbitration clauses by their very nature waive rights to trial by jury

10

and access to the courts, arbitration agreements will always waive fundamental rights. Dkt. No. 37 at 6. But this logic defies the fact that the *Kloss* factors do not look at whether waiver of fundamental rights is unconscionable, but simply evaluate whether such waiver was "deliberately, understandably and intelligently" made. *See* Dkt. No. 29, at 7. Hypothetically speaking, under *Kloss*, an arbitration clause in a contract of adhesion could be enforceable notwithstanding waiver of a right to a jury trial, waiver of procedures for judicially monitored discovery, and waiver of federal and state evidentiary rules, as long as certain protections were afforded to the weaker party, such as unambiguous, clear and conspicuous waiver provisions that explain the consequences of waiver and that are accompanied by the individual's initials. This is a far cry from the types of rationalizations that the Supreme Court in *Concepcion* observed would conflict with the purposes of the FAA. *Concepcion*, 131 S. Ct. at 1747. Montana courts (and this Court) do not simply invalidate arbitration clauses in contracts of adhesion on the presumption that "no consumer would knowingly waive his right to full discovery", or his right to a trial by jury. *See id.* (observing that such a rationalization would frustrate the purpose of the FAA).[1]

---

[1] Defendant's reliance on *Arellano v. T-Mobile USA, Inc.*, No. C 10-05663, 2011 WL 1842712 (N.D. Cal.) is misplaced. Dkt 37, n. 9. Unlike in that case, Montana law does not prohibit arbitration, but merely requires certain additional steps in contracts of adhesion.

As the Court noted in its June 8, 2011 Order Granting Leave to File a Motion for Reconsideration, whether or not a contract is unenforceable because it is unconscionable is a different question than whether a contract is unenforceable because it violates the reasonable expectations of the parties. Dkt. No. 35, at 2, n.1 (citing *Iwen*, 977 P.2d at 995). In the Arbitration Order, the Court made no findings as to whether the arbitration clause in the Subscriber Agreement was unconscionable; rather the Court held that the arbitration clause was "not within the Plaintiffs' reasonable expectations." Contrary to Defendant's assertions, this is not "a distinction without a difference." Dkt. No. 37 at 5. Though the Defendant correctly notes that both involve "contract formation" (Dkt. No. 37, at 6), these legal principles differ fundamentally, as the whether a contract is unconscionable deals with the terms of the contract itself, whereas a "reasonable expectation" analysis and a heightened scrutiny for contractual provisions which forgo fundamental constitution rights, turn on external facts and circumstances surrounding consent to the contractual provision.

Defendant's attempt to challenge the application of Montana law to the contract is unavailing.  This issue was fully briefed in the original motion to compel arbitration (Dkts, 9, 22, 25).  This Court properly applied Montana law to a contract that was executed in Montana, entirely performed in Montana, affected subject matter entirely located in Montana, and is the domicile of the Plaintiff –

12

who had no connection to New York. Arbitration Order at 4 (citing *Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1257 (9th Cir. 2005)). As discussed above, the fact that Montana law requires greater scrutiny to contracts of adhesion does not necessarily make it "arbitration-hostile" Dkt. 37 at p. 10.

## CONCLUSION

Defendant seeks to use *Concepcion* to create an all-encompassing immunity for contract clauses so that, no matter how much they disfavor consumers subjected to contracts of adhesion, such clauses can never be found to lie outside consumers' reasonable expectations and can never be found to have resulted in the impermissible waiver of fundamental rights guaranteed in Montana's Constitution. However, the *Concepcion* decision offers no basis for disturbing the ruling of this Court regarding Defendant's arbitration clause. Rather, as discussed above, the reasoning of *Concepcion* is anchored in he Court's view that the "heartily endorsed" consumer-friendly arbitration terms—notably absent from Defendant's Subscriber Agreement—both allowed for fulfillment of the FAA goal of the speedy and efficient resolution of claims and actually provided consumers with a means of redress. *Id.* at 1744, 1750.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Reconsideration of the Court's Arbitration Order.

Dated this 13th day of July, 2011         Respectfully submitted,

/s/ David A. Stampley
David A. Stampley
KamberLaw, LLC
One of the Attorneys for Plaintiffs

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief in Opposition to Defendant's Motion to For Reconsideration contains fewer than 3,250 words.

/s/ David A. Stampley
David A. Stampley

## CERTIFICATE OF SERVICE

I certify that on July 13, 201l, a copy of the foregoing document was served on the following persons by the following means:

```
 1, 2, 3    CM/ECF
_____ Hand Delivery
_____ Mail
_____ Overnight Delivery Service
_____ Fax
_____ E-Mail
```

1. Clerk, U.S. District Court

2. W. Scott Mitchell, Esq.
   Holland & Hart, LLP
   Attorneys for Defendant

3. John D. Seiver
   Adam S. Caldwell
   Ronald G. London
   Elizabeth A. Drogula
   Davis Wright Tremaine, LLP
   Attorneys for Defendant