IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DALE MORTENSEN and MELISSA BECKER, individually, and on behalf of themselves and all others similarly situated,<br><br>　　　　　　Plaintiffs,<br>　　vs.<br><br>BRESNAN COMMUNICATIONS, L.L.C.,<br><br>　　　　　　Defendant. | CV-10-13-DLC-RKS<br><br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

## I.  Synopsis

Defendant Bresnan Communications ("Bresnan") moved to the compel arbitration of the claims of Plaintiffs Dale Mortensen and Melissa Becker (collectively "Plaintiffs").  That motion was previously denied.  The motion was denied again upon reconsideration.  Bresnan took appeal.  The Ninth Circuit remanded and directed the application of New York law rather than Montana law.

Arbitration should be compelled upon analysis of New York law.  The service agreement represents a validly formed contract under New York law.  The arbitration provision of that contract is not unconscionable because the potential for high costs to the plaintiffs is speculative.

1

## II.  Jurisdiction

The Court has personal jurisdiction over the parties, all of whom are found in Montana. FED.R.CIV.P. 4(k)(1)(A); MONT. R. CIV. P. 4(b).  Plaintiffs reside in Montana and Defendants conduct extensive, pervasive business in the state.  See Complaint, Doc. 1 at 4-6; Answer, Doc. 31 at 2-3. The case was initially assigned to District Judge Richard Cebull, but was reassigned to Chief Judge Dana Christensen upon Judge Cebull's retirement.  (Doc. 57 at 3.)  Chief Judge Christensen referred this matter to the undersigned on June 11, 2013, in compliance with D. MONT. L. R. 72.2(b). (Doc. 59.).  Subject matter jurisdiction exists both because the parties are diverse and because the case presents issues of federal law.  See Complaint, Doc. 1 at 6; 28 U.S.C. §§ 1331, 1332.

## III. Status

The United States Court of Appeals for the Ninth Circuit vacated Judge Cebull's decision that declined to reconsider whether to compel arbitration under Montana law (doc. 48), and remanded for consideration of Bresnan's motion to compel arbitration under New York law. (Doc. 61); *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151 (9th Cir. 2013) [hereinafter *Mortensen*]. Both the Plaintiffs and Bresnan have briefed how New York law affects Bresnan's motion to compel arbitration. (Docs. 64, 65.)

## IV. Standards

### A. Arbitration Under the Federal Arbitration Act

The Federal Arbitration Act ("FAA") makes arbitration agreements in contracts involving interstate commerce presumptively "valid, irrevocable, and enforceable." *Mortensen*, 722 F.3d at 1157 (internal quotations omitted); *see also* 9 U.S.C. § 2.  The FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Mortensen*, 722 F.3d at 1157. To determine whether to compel arbitration, courts must consider (1) whether there was a valid agreement to arbitrate between the parties, and (2) whether the arbitration agreement covers the dispute at issue. *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013).

The FAA preempts contrary state law, but the FAA savings clause does not require enforcement of arbitration agreements on "such grounds as exist at law or in equity for the revocation of any contract." *Mortensen*, 722 F.3d at 1158 (quoting 9 U.S.C. § 2). Recent cases from the Supreme Court have made clear that state law rules that stand as obstacles to arbitration are preempted. *Mortensen*, 722 F.3d at 1158; *Marmet Health Care Center, Inc. v. Brown*, ___ U.S. ___,  ___, 132 S.Ct. 1201, 1203 (2012) ("When state law prohibits . . . the arbitration of a particular type of claim, the analysis is straightforward: [t]he conflicting rule is displaced by the FAA.").

The FAA favors arbitration rather than merely affording it equal footing. *Mortensen*, 722 F.3d at 1158.  The FAA pre-empts state laws that are unfavorable to arbitration, regardless of the savings clause. *Id.*  Any "general state-law contract defense, based in unconscionability or otherwise, that has a disproportionate effect on arbitration is displaced by the FAA." *Id.*

Under the FAA, the determination as to whether the parties have entered into an agreement to arbitrate is made by applying ordinary state law principles governing the formation of contracts.  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Perry v. Thomas*, 482 U.S. 483, 492 (1987); *Hayes v. Cnty. Bank*, 26 A.D.3d 465, 466, 811 N.Y.S.2d 741 (2006).

## B. Contract Formation and Arbitration Under New York Law

Under New York law, the parties' intent governs when interpreting a contract. *God's Battalion of Prayer Pentecostal Church, Inc. v. Miele Associates, LLP*, 6 N.Y.3d 371, 374, 845 N.E.2d 1265 (2006).  There must be a meeting of the minds to create a binding contract.  *Express Indus. & Terminal Corp. v. New York State Dep't of Transp.*, 93 N.Y.2d 584, 589, 715 N.E.2d 1050 (1999).

When a validly formed contract requires arbitration, a party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration.  N.Y. C.P.L.R. § 7503(a).   Where there is no substantial question as to whether the parties made or complied with a valid agreement, and the claim sought to be

arbitrated is not barred by limitation under subdivision (b) of section 7502, the court must direct the parties to arbitrate. N.Y. C.P.L.R. § 7503(a).

Arbitration agreements are enforceable "without regard to the justiciable character of the controversy," a fact that precludes consideration of "whether the claim with respect to which arbitration is sought is tenable or otherwise pass[ing] upon the merits of the dispute."  N.Y. C.P.L.R. §  7501.  The New York Court of Appeals has set forth three threshold questions requiring judicial determination when evaluating a motion to stay or compel: "whether the parties made a valid agreement to arbitrate, whether if such an agreement was made it has been complied with, and whether the claim sought to be arbitrated would be barred by limitation of time had it been asserted in a court of the State."  *Rockland Cnty. v. Primiano Const. Co., Inc.*, 51 N.Y.2d 1, 6-7, 409 N.E.2d 951, 952-54 (1980) (internal quotations and citations omitted); N.Y. C.P.L.R. §§  7503(a), 7502.

New York strongly favors arbitration.  *In re Miller*, 40 A.D.3d 861, 835 N.Y.S.2d 728 (2007); *Union Free Dist. No. 15, Town of Hempstead v. Lawrence Teachers Ass'n*, 33 A.D.3d 808, 822 N.Y.S.2d 767 (2006).

## V. Factual Allegations

### A.  Historical Background

Plaintiffs subscribed to Internet services that Bresnan had provided. *Mortensen*, 722 F.3d at 1154.  Upon installation of equipment necessary to activate

Bresnan's service, the installing technician delivered a "Welcome Kit." *Id.* That

kit included the Bresnan OnLine Internet Service Subscriber Agreement and

Acceptable Use Policy ("service agreement"). *Id.*

The first page of the service agreement advised customers "to read [the

service] Agreement very carefully, because by accepting the Service, you agree to

all of these terms. *Id.* Paragraph 9, found on page 21 of the 31-page service

agreement, required that "ANY AND ALL DISPUTES ARISING BETWEEN

CUSTOMER AND BRESNAN COMMUNICATIONS . . . WHETHER ARISING

BEFORE OR AFTER THE EFFECTIVE DATE OF THIS AGREEMENT, MUST

BE RESOLVED BY FINAL AND BINDING ARBITRATION." *Id.*

(capitalization in original).

In 2008, Bresnan contracted with NebuAd, Inc. ("NebuAd"), to allow

NebuAd to place an appliance in Bresnan's Billings, Montana facility. *Id.* The

appliance gathered information and created profiles of Bresnan's subscribers in

order to target customers with advertising. *Mortensen*, 722 F.3d at 1154. Bresnan

claims that customers received notice about NebuAd's appliance, and received a

corresponding opportunity to opt out. *Id.* Plaintiffs allege that the notice was

misleading, and that Bresnan failed to obtain consent. *Id.*

Plaintiffs filed a class action suit in this District, alleging violations of the

Electronic Communications Privacy Act, 18 U.S.C. §§ 2520–21, and the Computer

Fraud and Abuse Act, 18 U.S.C. § 1030, while also asserting state-law claims for invasion of privacy and trespass to chattels. *Id.* at 1156.  Bresnan moved to compel arbitration, and to dismiss for failure to state a claim.  (Docs. 8, 9, 10, 11.) Bresnan's motion to compel arbitration was denied under tenets of Montana law on September 22, 2010. (Doc. 28.)  All but two of Plaintiffs' claims were dismissed on December 13. 2010. (Doc. 30.)

The United States Supreme Court decided *AT&T Mobility LLC v. Concepcion* shortly thereafter. 131 S.Ct. 1740, (2011). Bresnan sought reconsideration of the order that denied Bresnan's motion to compel arbitration. (Docs. 34, 35, 36, 37.)  Bresnan's motion for reconsideration was denied again under tenets of Montana law on September 16, 2011. (Doc. 48.)

Bresnan appealed.  (Doc. 50.)  The Ninth Circuit held that the FAA pre-empted Montana law, and that the district court erred in disregarding the parties' choice of law provision.  The Ninth Circuit vacated the district court decision and remanded the case with instructions to apply New York law. *Mortensen*, 722 F.3d at 1162.

## B. Motion to Compel Arbitration

On remand, supplemental briefing was solicited from the parties. (Doc. 63.) Bresnan maintains that no challenge to the arbitration provision can exist under

New York Law.  (Doc. 64 at 1-4.)  Bresnan further aruges that the law of the case dictates that arbitration must be compelled.  (*Id*. at 4-7.)

Plaintiffs challenge two aspects of the service agreement.  Plaintiffs challenge first the creation of a valid contract "by reference."   (Doc. 65 at 2-3.) Plaintiffs argue that "there is no evidence indicating that, at the time Plaintiffs contracted with Bresnan for Internet service, they were even aware of the 'Subscriber Agreement.'" (Doc. 22 at 2.)  Plaintiffs note that "the arbitration clause Bresnan seeks to enforce [] is buried on page 21 of a 30-page document." (Doc. 65 at 3.)

Plaintiff's second challenge asserts that the arbitration provision of the service agreement is unconscionable because the fees and costs of arbitration would render Plaintiff's claim cost-prohibitive. (Doc. 65 at 2-9.)  Plaintiff's claim that enforcement of the arbitration clause would "preclude [the Plaintiffs] from pursuing statutory rights in the arbitral forum" due to the requirement that Plaintiffs *might* have to pay a share of the arbitral fees and costs. (Doc. 65 at 5.)

## VI. Analysis

### A.  Validity of the Formation of the Service Agreement

Plaintiffs first challenge the validity of their contract with Bresnan under New York law.  Bresnan delivered the service agreement to the Plaintiffs. *Mortensen*, 722 F.3d at 1154.  Plaintiffs did not opt out of the agreement to

arbitrate, and instead continued to use Bresnan's internet service. *Id.*  Plaintiffs suggest that they may have failed to read the arbitration agreement. (*See* doc. 22 at 2.)

New York law recognizes that failure to opt out of a contract evidences consent to the terms of that contract. *Tsadilas v. Providian Nat. Bank*, 13 A.D.3d 190, 786 N.Y.S.2d 478, 480 (2004).  New York law further recognizes that continued use of the service which the contract provides represents acceptance of the contract terms.  *Id.* Failure to read contract terms does not preclude the formation of a valid contract. *Brower v. Gateway 2000, Inc.*, 246 A.D.2d 246, 252, 676 N.Y.S.2d 569, 572 (1998).

Plaintiffs' failure to opt out of the service agreement, failure to discontinue use of Bresnan's internet service, and failure to read the service agreement do not prevent the formation of a valid contract. *Tsadilas*, 13 A.D.3d at 190; *Gateway 2000, Inc.*, 246 A.D.2d 246. The parties made a valid agreement under New York law. *Rockland Cnty. v. Primiano Const. Co., Inc.*, 51 N.Y.2d at 6-7.

The service agreement requires that the parties submit to arbitration "any and all disputes." *Mortensen*, 722 F.3d at 1154.  No ambiguity exists in the arbitration agreement. The arbitration agreement is "clear and direct" and does "not depend upon implication, inveiglement or subtlety."  *Marlene Indus. Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 380 N.E.2d 239 (1978).  New York law

mandates that no variance from the terms of the service agreement is permissible. *Id.* Plaintiffs failed to comply with the valid agreement to arbitrate that they made.

Plaintiff's claim would not be barred by time limitation in a New York Court: Plaintiffs initiated this lawsuit in February 2010, based on conduct that occurred in 2008. Thus, the claims are within the applicable statutes of limitation. 18 U.S.C. § 2520(e) (providing two-year limitation period for Electronic Communications Privacy Act claims); 18 U.S.C. § 1030(g) (providing two-year limitations period for Computer Fraud and Abuse Act private claims); Mont. Code Ann. § 27-2-204 (three-year statute of limitations for Montana tort claims). The parties had a meeting of the minds sufficient to create a contract. *Express Indus. & Terminal Corp.*, 93 N.Y.2d at 589 (1999). The parties made a valid agreement to arbitrate, and the arbitration agreement covers the dispute at issue. *Kilgore*, 718 F.3d at 1058. They should be directed to arbitrate. N.Y. C.P.L.R. § 7503(a).

## B. Validity of the Service Agreement as Unconscionable due to costs

Plaintiffs claim the arbitration provision of the service agreement is unconscionable. (*See generally* doc. 65.) Plaintiffs argue that enforcement of the contract would contravene the public policy of New York. (Doc. 65 at 3-9.) Plaintiffs rely on an affidavit from Dale Mortensen to argue that the enforceability of the arbitration clause depends upon Plaintiffs' "ability to pay the fees and costs

required by the [service] agreement." (Doc. 65 at 7-8.[1])  Plaintiffs further contend

that their share of the expenses of arbitration would make arbitration too costly for

them to proceed. (*Id.* at 8.)

The United States Supreme Court has established the framework to evaluate

whether arbitration is cost prohibitive. *Green Tree Financial Corp.-Ala. v.

Randolph*, 531 U.S. 79 (2000).   The Supreme Court held that the existence of

large arbitration costs *could* preclude litigants, such as the Plaintiffs, from

effectively vindicating federal statutory rights in the arbitral forum.  *Id.* at 90

(emphasis added).  However, the risk of prohibitive cost alone was "too

speculative to justify the invalidation of the agreement." *Id.* at 91.

Plaintiffs have similarly failed to allege anything more than a risk of a

prohibitive cost.  *Green Tree* makes clear that the mere "risk that [the Plaintiffs]

will be saddled with prohibitive costs is too speculative to justify the invalidation

of an arbitration agreement." 531 U.S. at 91 (internal quotation marks omitted).

Plaintiffs have failed to establish that the arbitration provision is unconscionable

because of the potential cost.

---

[1] The Court notes the Plaintiffs also submitted a second attachment that purports to be an
affidavit of Melissa Baker. (Doc. 65-1 at 17-19.) This affidavit lacks a signature to validate the
declaration under penalty of perjury. (*Id.* at 19.) It represents instead the statement "WILL
SUBMIT FINAL SIGNED DOC WHEN RECEIVED." (*Id.* at 19.) This attachment was not
considered pursuant to L.R. 11(1)(d).

## VII. Conclusion

The court **FINDS:**

1. The parties' contract includes an arbitration clause that is valid and enforceable under New York law.

2. The arbitration clause in the parties' contract applies to the claims presented in this case.

The court **RECOMMENDS**:

1. The District Court should **GRANT** Bresnan's Motion to reconsider order on motion to compel (Doc. 36);

2. The District Court should **VACATE** the previous order denying the motion to compel arbitration (Doc. 29);

3. The District Court should **GRANT** Bresnan's motion to compel arbitration (Doc. 8);

4. The District Court should **STAY** this action pending arbitration of Plaintiffs' claim for money damages, pursuant to 9 U.S.C. § 3.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

Either party may file objections to these Findings and Recommendations within fourteen (14) days after they are filed.  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to FED.R.APP.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 6th day of May, 2014.


Keith Strong
United States Magistrate Judge